Receipt number AUSFCC-7922403

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| 1. Christofere C. Baker | |
| 2. Carlos D. Baugh | |
| 3. Melanie D. Baumgartner | |
| 4. Wanda L. Bess | |
| 5. William C. Brown | |
| 6. Carl A. Bryant | Case No. __22-586 C__ |
| 7. Stephanie M. Bunnell | (Judge _____) |
| 8. Jennifer L. Burfiet | COMPLAINT |
| 9. Alicia D. Cannon | |
| 10. Bobby J. Casey | |
| 11. Leonard T. Collins | |
| 12. James L. Diggs | |
| 13. Joyce Y. Floyd | |
| 14. Gregory D. Gibbs | |
| 15. Lillie A. Grandison | |
| 16. Takia R. Hall | |
| 17. Karen Harvey | |
| 18. Carrie M. Hester | |
| 19. Antonio T. James | |
| 20. Natasha L. Jernigan | |
| 21. Jonathan D. Linville | |
| 22. Eric R. Lown | |

23. Eugene T. Mackey

24. Ernest F. Mattison

25. Rashad B. Nelson

26. Aixa Perez

27. Stepfan M. Peterson

28. Richard A. Raber

29. Jane A. Roscoe

30. Adam W. Simmons

31. William F. Standley

32. Dorothea D. Turner-Usher

33. Tyler B. Walker

34. Dale Wilson

35. Paul R. Wygaz

    Plaintiffs,

    v.

THE UNITED STATES,

    Defendant.

## **COMPLAINT**

1. Plaintiffs are current and former employees employed by the defendant United States Government ("defendant" or "Government") at the U.S. Department of the Navy, Fleet Readiness Center Southeast, located in Jacksonville, Florida (hereinafter "FRCSE"). Plaintiffs bring this action for damages and other relief, pursuant to 29 U.S.C. § 216(b); 28 U.S.C. §§ 1346(a)(2), 1491; 5 U.S.C. §§ 5545(d), 5343(c)(4), 5596 (the Back Pay Act), and the overtime

2

provisions of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 207, to remedy the defendant's willful and unlawful violations of law complained of herein.

## JURISDICTION AND VENUE

2.  This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1346(a)(2), 28 U.S.C. § 1491, 29 U.S.C. § 216(b), 5 U.S.C. § 5545(d), 5 U.S.C. § 5343(c)(4), 5 U.S.C. § 5596 and 28 U.S.C. § 2501. Venue is proper pursuant to 28 U.S.C. § 1402.

## PARTIES

3.  Plaintiff Carlos D. Baugh is a resident of Jacksonville, Florida, and is currently employed by defendant United States pursuant to Title 5 of the U.S. Code. Plaintiff Baugh is currently employed as a Production Controller, GS-7, Step 5 (paid under the "General Schedule"), at FRCSE. At various times within the last six years, and specifically, since in or around February 2020, plaintiff Baugh has been required to perform duties involving unusual physical hardship and hazards within the meaning of 5 U.S.C. §5545(d), and therefore, as detailed below, plaintiff Baugh is entitled to "hazardous duty pay" for each such day.

4.  Plaintiff Jonathan D. Linville is a resident of Yulee, Florida, and is currently employed by defendant United States pursuant to Title 5 of the U.S. Code. He is currently employed as a Planner and Estimator, WD-8, Step 3 (paid under the "Federal Wage System"), at FRCSE. At various times within the last six years, and specifically, since in or around February 2020, plaintiff Linville has been required to perform duties involving unusually severe working conditions or unusually severe hazards within the meaning of 5 U.S.C. § 5343(c)(4), and therefore, as detailed below, plaintiff Linville is entitled to "environmental differential pay" for each such day.

5.  The additional persons who are plaintiffs in this action are or were employees of

the defendant at FRCSE within the relevant timeframe. Each of the additional plaintiffs has been required to perform duties involving unusual physical hardship and hazards within the meaning of 5 U.S.C. §5545(d) and/or has been required to perform duties involving unusually severe working conditions or unusually severe hazards within the meaning of 5 U.S.C. § 5343(c)(4), and therefore, as detailed below, is entitled to "hazardous duty pay" and/or "environmental differential pay" for each such day.

6. Each plaintiff in this action is, or has been, an "employee" within the meaning of Title 5 of the U.S. Code, specifically 5 U.S.C. §§ 2105, 5102, and 5342, and within the meaning of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 203(e)(1).

7. Each plaintiff is a current or former civilian employee employed by the U.S. Department of the Navy, Fleet Readiness Center in Jacksonville, Florida. They have given their written consent to be party plaintiffs in this action pursuant to 29 U.S.C. § 216(b), and their consent to sue forms are attached as Exhibit A. These written consent forms set forth each plaintiff's name and home address.

8. The defendant, United States, is and at all material times has been, an employer under Title 5 of the U.S. Code, specifically 5 U.S.C. §§ 5102 and 5541. In addition, defendant United States is, and at all material times has been, a "public agency" and "employer" within the meaning of the FLSA, 29 U.S.C. § 203(x) and § 203(d). Defendant employs, or has employed, plaintiffs and other employees in similar activities and has its principal place of business in Washington, D.C.

## FACTS

9. At all times material herein, plaintiffs have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. § 201, *et seq*.

10. At all times material herein, plaintiffs have been suffered or permitted to work, and have in fact worked, in excess of the hourly levels specified in the FLSA, 29 U.S.C. § 207. As a result, at all times material herein, plaintiffs have been entitled to overtime compensation at a rate of not less than one and one-half times their regular rates of pay for the hours of overtime they have been scheduled to and did work.

11. FRCSE is a U.S. Navy maintenance, repair and overhaul depot-level facility located onboard Naval Air Station Jacksonville with intermediate-level detachments at Naval Air Station Jacksonville, Naval Station Mayport and Naval Air Station Key West.

12. Section 5545(d) of Title 5 of the U.S. Code provides that the United States Office of Personnel Management ("OPM") shall establish a schedule of pay differentials for duty involving unusual physical hardship or hazard. Pursuant to 5 U.S.C. § 5545(d), OPM has issued regulations at 5 C.F.R. §§ 550.901-550.907, which establish a schedule of hazardous duty pay differentials and provide that an employee who qualifies for hazardous duty pay shall be paid the hazardous duty pay differential for each day that the employee is exposed to hazardous duty.

13. The schedule of hazardous duty pay differentials set forth in Appendix A to Subpart I of Part 550 of Title 5, Code of Federal Regulations, provides that agencies shall pay a twenty five percent (25%) hazard pay differential when employees perform work with or in close proximity to "virulent biologicals," which are defined as "materials of micro-organic nature which when introduced into the body are likely to cause serious disease or fatality and for which protective devices do not afford complete protection." 5 C.F.R. Pt. 550, Subpt. I, App. A.

14. OPM has also issued regulations for prevailing rate employees pursuant to 5 U.S.C. § 5343(c)(4), which provide for environmental pay differentials for duty involving unusually severe working conditions or unusually severe hazards. *See* 5 C.F.R. § 532.511.

15.     The schedule of environmental pay differentials set forth in Appendix A to Subpart E of Part 532 of Title 5, Code of Federal Regulations, provides that agencies shall pay an eight percent (8%) environmental differential when employees perform work with or in close proximity to "micro-organisms which involves potential personal injury such as death, or temporary, partial, or complete loss of faculties or ability to work due to acute, prolonged, or chronic disease" where "the use of safety devices and equipment, medical prophylactic procedures such as vaccines and antiserums and other safety measures do not exist or have been developed but have not practically eliminated the potential for such personal injury" and a four percent (4%) environmental pay differential when employees perform work with or in close proximity to "micro-organisms in situations for which the nature of the work does not require the individual to be in direct contact with primary containers of organisms pathogenic for man" where "the use of safety devices and equipment and other safety measures have not practically eliminated the potential for personal injury" and 5 C.F.R. Pt. 532, Subpt. E, App. A.

16.     Beginning in or around February 2020, and continuing and ongoing, plaintiffs have performed work with or in close proximity to COVID-19, the virulent biological, including, without limitation, work with or in close proximity to facilities, rooms, offices, workspaces, equipment, objects, surfaces, and/or individuals infected with the novel coronavirus that causes COVID-19.

17.     COVID-19 is a virus[1] that, when introduced into the body, is likely to cause serious disease or fatality. The Centers for Disease Control and Prevention ("CDC") has determined that COVID-19 meets the definition for "severe acute respiratory syndromes" as set forth in Executive

---

[1] Although COVID-19 is technically the disease caused by the novel coronavirus, plaintiffs will hereafter refer to the virus and the disease it causes simply as "COVID-19."

6

Order 13295, as amended by Executive Orders 13375 and 13674, and, therefore, is a "quarantinable communicable disease." *See* Office of Pers. Mgmt., CPM 2020-05, *Coronavirus Disease 2019 (COVID-19): Additional Guidance* (March 7, 2020), *available at* https://www.chcoc.gov/content/coronavirus-disease-2019-covid-19-additional-guidance (last visited May 20, 2022). COVID-19 can cause symptoms ranging from mild illness to severe illness and death. *See Coronavirus Disease 2019 (COVID-19), Symptoms of Coronavirus*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/symptoms-testing/symptoms.html (last visited May 20, 2022).

18. More than 6,274,111 people worldwide, including more than 998,512 in the United States, have died from COVID-19. *See Coronavirus disease (COVID-19) pandemic*, World Health Org., https://covid19.who.int/ (last visited May 20, 2022); *Coronavirus Disease 2019 (COVID-19), Cases in the U.S.*, CDC, https://covid.cdc.gov/covid-data-tracker/#datatracker-home (last visited May 20, 2022).

19. COVID-19 spreads very easily from person to person and has been characterized as a pandemic by the World Health Organization ("WHO"). *Coronavirus Disease 2019 (COVID-19), How COVID-19 Spreads*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/how-covid-spreads.html (last visited May 20, 2022).

20. COVID-19 can be spread by breathing in areas where an infected person has coughed or exhaled. As the WHO explains, "The virus can spread from an infected person's mouth or nose in small liquid particles when they cough, sneeze, speak, sing or breathe. . .. People may also become infected by touching surfaces that have been contaminated by the virus when touching their eyes, nose or mouth without cleaning their hands." *Coronavirus disease (COVID-19): How Does COVID-19 Spread Between People?* (updated December 23, 2021),

https://www.who.int/news-room/q-a-detail/coronavirus-disease-covid-19-how-is-it-transmitted (open "How does COVID-19 spread between people?") (last visited May 20, 2022).

21. A person who is infected with COVID-19 may not present symptoms immediately. Rather, there is an "incubation period" in which a person is infected but has not begun to present symptoms. According to the WHO, "[t]he time from exposure to COVID-19 to the moment when symptoms begin is, on average, 5-6 days and can range from 1–14 days." *Q&A on coronaviruses (COVID-19)*, WHO, (updated May 13, 2021), https://www.who.int/news-room/q-a-detail/q-a-coronaviruses (open "How long does it take to develop symptoms?") (last visited May 20, 2022).

22. An infected individual may spread COVID-19 before he or she begins to present significant symptoms. As the WHO explains, "[w]hether or not they have symptoms, infected people can be contagious and the virus can spread from them to other people. Laboratory data suggests that infected people appear to be most infectious just before they develop symptoms (namely 2 days before they develop symptoms) and early in their illness." *Coronavirus disease (COVID-19): How is it transmitted?* (updated December 23, 2021), https://www.who.int/news-room/q-a-detail/coronavirus-disease-covid-19-how-is-it-transmitted (open "When do infected people transmit the virus") (last visited May 20, 2022).

23. The Centers for Disease Control and Prevention recommends social distancing, staying at least six feet away from other people, to stop the spread of COVID-19. *How to Protect Yourself and Others* (updated February 25, 2022), https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/prevention.html#:~:text=Stay%206%20feet%20away%20from,sick%20and%20other%20household%20members. (last visited May 20, 2022).

24. The Department of Defense has had at least 128,698 civilian employees test positive for COVID-19 and at least 416 civilian employees die from COVID-19. *Coronavirus:*

*DOD Response* (update May 13, 2022), https://www.defense.gov/Spotlights/Coronavirus-DOD-Response/ (last visited May 20, 2022).

25. FRSCE has experienced multiple outbreaks of COVID-19 among its employees required to work on site since the beginning of the COVID-19 pandemic.

26. Since at least February 2020, through the present and continuing and ongoing, plaintiffs and others similarly situated have performed work with or in close proximity to objects, surfaces, and/or individuals infected with COVID-19 without sufficient protective devices.

27. Unlike many Government employees, defendant has determined that the plaintiffs cannot work remotely, even during a pandemic. This is because the plaintiffs perform hands-on production and maintenance jobs such as production controller and planner and estimator, which FRCSE has determined cannot be performed remotely.

28. For example a production controller is involved in hands-on production and maintenance duties of military equipment and work projects which cannot be accomplished remotely. Production controllers are tasked with handling work orders and working with artisans to ensure that the work orders are completed in a timely manner. Similarly, a planner and estimator performs hands-on review of projects to develop a cost and price analysis which cannot be accomplished remotely. Because these jobs require the employees to work with pieces of military equipment, the defendant determined that the jobs could not be completed remotely and the employees holding them have been required to report in person to FRSCE each work day, even during the pandemic.

29. FRCSE determined that the positions held by plaintiffs could not be performed remotely during the pandemic. While other employees at FRCSE were permitted to telework due

to COVID-19, FRCSE required plaintiffs to continue to perform work in person just as they had prior to the COVID-19 pandemic.

30. FRCSE did not schedule plaintiffs to work in a manner that permitted them to social distance. Instead, plaintiffs were frequently assigned to perform work in the same room as others and were not able to maintain six feet between themselves and others.

31. Plaintiffs have been assigned by defendant to work with multiple other employees in shared offices during the pandemic. The defendant has assigned the shared offices, which are approximately 14 feet by 20 feet, to between 12 and 18 employees at a time.

32. Defendant mandated that plaintiffs report to work in person during the pandemic in manners that violated the direction of the Centers of Disease Control. For instance, the defendant required plaintiffs to report to work in person *even if the plaintiffs had been notified through contract tracing that they had been in close contact with an individual who tested positive for COVID-19*.

33. Defendant maintains a record of each plaintiff's employment and job assignments. Accordingly, defendant knows the jobs and locations to which each plaintiff has been assigned on a daily basis going back to the beginning of the pandemic and before.

34. The jobs and duties to which plaintiffs have been assigned at FRCSE involve prolonged, close-quarters exposure to coworkers and contractors, often in indoor or enclosed settings. Plaintiffs regularly interact with coworkers and others on premises at FRCSE and come into close proximity or direct physical contact with coworkers and other individuals on a daily basis while performing their job duties.

35. Each shift, plaintiffs come into close personal contact with coworkers and other and physically touch equipment and devices that are regularly handled by others, such as the military equipment and orders that they are tasked with maintaining and completing.

36. The foregoing exposure to individuals infected with COVID-19 was not taken into account in the classification of plaintiffs' positions.

37. Defendant has not provided sufficient protective equipment nor measures to practically eliminate the hazard of exposure to COVID-19 at FRCSE.

38. Defendant has not provided adequate space to allow for social distancing at FRCSE.

39. Plaintiffs work in close proximity to COVID-19 at FRCSE, and they have performed work that involves potential personal injury such as death, or temporary, partial, or complete loss of faculties or ability to work due to acute, prolonged, or chronic disease within the meaning of subpart E of Part 532 of Title 5, Code of Federal Regulations.

40. As a result of plaintiffs' performance of their official duties in close proximity to COVID-19 on objects, surfaces, and/or individuals infected with COVID-19, as alleged herein, plaintiffs have been exposed to "virulent biologicals" within the meaning of Subpart I of Part 550 of Title 5, Code of Federal Regulations, and hazardous micro-organisms within the meaning of Subpart E of Part 532 of Title 5, Code of Federal Regulations.

41. Defendant has not compensated plaintiffs with the hazardous duty pay differential for exposure to virulent biologicals as set forth in Appendix A to Subpart I of Part 550 of Title 5, Code of Federal Regulations, or the environmental differential for exposure to hazardous microorganisms set forth in Appendix A to Subpart E of Part 532 of Title 5, Code of Federal Regulations. Accordingly, defendant has failed to provide hazardous duty and environmental differential pay to plaintiffs when they work with or in close proximity to COVID-19 on objects,

surfaces, and/or individuals infected with COVID-19 as required by 5 U.S.C. § 5545(d) and 5 U.S.C. § 5343(c)(4).

42. Because defendant has failed to pay plaintiffs hazardous duty pay and/or environmental pay differentials, defendant has not included such pay when calculating plaintiffs' regular rates of pay for purposes of calculating and paying overtime compensation under the FLSA.

## CLAIMS

### COUNT ONE – Hazardous Duty Pay

43. Plaintiffs re-allege and incorporate by reference herein paragraphs 1 through and including paragraph 42 of this Complaint.

44. Section 5545(d) of Title 5 of the U.S. Code provides that the United States Office of Personnel Management (OPM) shall establish a schedule of pay differentials for duty by federal employees involving unusual physical hardship or hazard. Section 5545(d) further provides that OPM prescribe "such minimum periods as it determines appropriate" during which an employee who performs duty involving physical hardship or hazard is entitled to hazardous duty pay.

45. Pursuant to Section 5545(d) of Title 5, OPM has issued regulations at 5 C.F.R. §§ 550.901-550.907 pertaining to hazardous duty pay. These regulations establish a schedule of hazardous pay differentials and provide, *inter alia*, that an employee who qualifies for hazardous duty pay shall be paid hazardous duty pay for each day that the employee is exposed to hazardous duty or physical hardship.

46. The schedule of hazardous duty pay differentials that OPM has established in regulations 5 C.F.R. §§ 550.901-550.907 provides that agencies shall pay hazardous duty pay to employees who are exposed to virulent biologicals, such as COVID-19, to which plaintiffs have been exposed. They further provide that the hazardous duty pay differential which the agency shall

pay the employees equals twenty five percent (25%).

47. Since at least February 2020, through the present and continuing and ongoing, plaintiffs and others similarly situated have performed work with or in close proximity to COVID-19, including, without limitation, work performed with or in close proximity to facilities, rooms, offices, workspaces and/or individuals infected with COVID-19 without sufficient protective devices. The defendant is in exclusive possession of relevant personnel files, records, and information, including but not limited to plaintiffs' dates of hire/separation, job descriptions, and work assignments. Defendant also retains records reflecting the names of employees and others at FRCSE who have had COVID-19, when they had COVID-19, and their locations during that time of infection and potential infection. These records, as well as other evidence in the defendant's exclusive custody and control, will readily demonstrate plaintiffs' close proximity to the virulent biological COVID-19.

48. Although plaintiffs have been exposed to virulent biologicals, defendant has failed and refused, and continues to fail and refuse, to pay plaintiffs the twenty five percent (25%) pay differential for each day that plaintiffs have been required to work in close proximity to COVID-19. By failing and refusing to pay plaintiffs a twenty five percent (25%) pay differential on these occasions, and continuing to fail and refuse to pay plaintiffs for this hazardous duty, the defendant has violated, and is continuing to violate, the provisions of Title 5 relating to hazardous duty pay at 5 U.S.C. § 5545(d).

49. As a consequence of defendant's failure and refusal to pay plaintiffs hazardous duty pay at all times material herein, plaintiffs have been unlawfully deprived of hazardous duty pay and other relief for the maximum statutory period allowed under federal law.

50. As a result of the defendant's willful and purposeful violations of Title 5, there has

become due and owing to each plaintiff various amounts which have not yet been precisely determined. The employment and work records, including each plaintiff's work assignments within FRCSE, are in the exclusive possession, custody and control of defendant and its public agencies and plaintiffs are unable to state at this time the exact amounts owing to each of them. For example, the defendant is in exclusive possession of relevant personnel files and records reflecting plaintiffs' dates of hire/separation, job descriptions, and work assignments, as well as records reflecting the names of employees and others who have had COVID-19, when they had COVID-19, and their locations in FRCSE during that time of infection and potential infection. Defendant and its public agencies are under a duty imposed by the Government Accounting Office retention schedule, the FLSA, 29 U.S.C. § 211(c), and various statutory and regulatory provisions to maintain and preserve payroll and other employment records with respect to plaintiffs and other employees similarly situated from which the amounts of defendant's liability can be ascertained.

51. Pursuant to the Back Pay Act, 5 U.S.C. § 5596, plaintiffs are entitled to recover interest on their back pay damages for the defendant's failure to pay them hazardous duty pay.

52. Plaintiffs are entitled to recover attorneys' fees and costs under the Back Pay Act, 5 U.S.C. § 5596, as well as other applicable laws and regulations.

**COUNT TWO – Environmental Differential Pay**

53. Plaintiffs re-allege and incorporate by reference herein paragraphs 1 through and including paragraph 52 of this Complaint.

54. Pursuant to 5 U.S.C. § 5343(c)(4), OPM has issued regulations regarding wage schedules and rates for prevailing rate employees which provide for environmental pay differentials for duty involving unusually severe working conditions or unusually severe hazards. *See* 5 C.F.R. § 532.511.

55. The schedule of environmental differentials is contained in Appendix A to Subpart E of Part 532 of Title 5, Code of Federal Regulations. *See* 5 C.F.R. § 532.511(d).

56. The schedule of environmental differentials provides that agencies shall pay an eight percent (8%) environmental differential when employees perform work with or in close proximity to "micro-organisms which involves potential personal injury such as death, or temporary, partial, or complete loss of faculties or ability to work due to acute, prolonged, or chronic disease" in situations where "the use of safety devices and equipment, medical prophylactic procedures such as vaccines and antiserums and other safety measures do not exist or have been developed but have not practically eliminated the potential for such personal injury" or a four percent (4%) environmental differential when employees perform work with or in close proximity to "micro-organisms in situations for which the nature of the work does not require the individual to be in direct contact with primary containers of organisms pathogenic for man" where "the use of safety devices and equipment and other safety measures have not practically eliminated the potential for personal injury." 5 C.F.R. Pt. 532, Subpt. E, App. A.

57. The regulations provide that "[a]n employee entitled to an environmental differential shall be paid an amount equal to the percentage rate authorized by the Office of Personnel Management for the category in which the working condition or hazard falls, multiplied by the rate for the second step of WG–10 for the appropriated fund employees and NA–10 for the nonappropriated fund employees on the current regular non-supervisory wage schedule for the wage area for which the differential is payable, counting one-half cent and over as a whole cent." 5 C.F.R. § 532.511(b)(1).

58. An employee entitled to an environmental differential on the basis of hours in a pay status "shall be paid for all hours in a pay status on the day on which he/she is exposed to the

situation." 5 C.F.R. § 532.511(b)(3).

59.     Since at least February 2020, through the present and continuing and ongoing, plaintiffs paid pursuant to the prevailing rate pay system and other similarly situated prevailing rate employees have performed work with or in close proximity to COVID-19, including, without limitation, work performed with or in close proximity to facilities, rooms, offices, workspaces, and/or individuals infected with COVID-19 without sufficient protective devices. The defendant is in exclusive possession of relevant personnel files, records, and information, including but not limited to plaintiffs' dates of hire/separation, job descriptions, and work assignments. Defendant also retains records reflecting the names of employees and others at FRCSE who have had COVID-19, when they had COVID-19 or potential/likely Covid-19 infection, and their locations in FRCSE during that time. These records, as well as other evidence in the defendant's exclusive custody and control, will readily demonstrate plaintiffs' close proximity to the virulent biological COVID-19.

60.     Defendant has failed, and continues to fail to pay plaintiffs the eight or four percent environmental differential listed in Appendix A to Subpart E of Part 532 of Title 5, Code of Federal Regulations for each period when they have been exposed to COVID-19 through the performance of their official duties.

61.     By failing to pay plaintiffs the eight or four percent environmental differential on these occasions, and continuing to fail and refuse to pay plaintiffs for this hazardous duty, the defendant has violated, and is continuing to violate, the provisions of 5 U.S.C. § 5343(c)(4).

62.     As a consequence of defendant's failure to pay plaintiffs environmental differential pay, plaintiffs have been unlawfully deprived of environmental differential pay and other relief.

63.     As a result of the defendant's willful and purposeful violations of Title 5, there has become due and owing to each plaintiff various amounts which have not yet been precisely

determined. The employment and work records, including each plaintiff's work assignments within FRCSE, are in the possession, custody and control of the defendant and plaintiffs are unable to state at this time the exact amounts owing to each of them. For example, the defendant is in exclusive possession of relevant personnel files and records reflecting plaintiffs' dates of hire/separation, job descriptions, and work assignments, as well as records reflecting the names of employees and others who have had COVID-19, when they had COVID-19 infection or potential/likely COVID-19 infection, and their locations in FRCSE during that time. Defendant is under a duty imposed by the Government Accounting Office retention schedule, the FLSA, 29 U.S.C. § 211(c), and various statutory and regulatory provisions to maintain and preserve payroll and other employment records with respect to plaintiffs and other employees similarly situated from which the amounts of defendant's liability can be ascertained.

64. Pursuant to the Back Pay Act, 5 U.S.C. § 5596, plaintiffs are entitled to recover interest on their back pay damages for the defendant's failure to pay them environmental pay differential.

65. Plaintiffs are entitled to recover attorneys' fees and costs under the Back Pay Act, 5 U.S.C. § 5596, as well as other applicable laws and regulations.

**COUNT 3 – FLSA Regular Rate**

66. Plaintiffs re-allege and incorporate by reference herein paragraphs 1 through and including paragraph 65 of this Complaint.

67. Section 7(a) of the FLSA, 29 U.S.C. § 207(a), provides that overtime shall be paid to employees for work hours in excess of 40 hours in a week at the rate of one and one-half times an employee's "regular rate of pay." In addition, Section 551.501 of Part 5 of the Code of Federal Regulations, 5 CFR § 551.501, provides that federal agency employers, such as the Department of

the Navy, shall compensate their employees at a rate of not less than one and one-half times the employees' regular rate of pay for all hours of work in excess of 8 in a day and/or 40 in a workweek.

68. At all times material herein, during the work weeks in which plaintiffs have been scheduled to and have worked in excess of 40 hours in a week and/or 8 hours in a day and have been paid overtime pay for such work, defendant has failed to properly calculate the "regular rate of pay" used to calculate FLSA overtime pay. Defendant has violated the FLSA by failing to include hazardous duty pay and environmental pay differential payments, owed to plaintiffs as set forth in Counts 1 and 2 above, in the regular rate of pay at which FLSA overtime is paid. The FLSA claim in this case is limited exclusively to the improper calculation of the regular rate of pay used by the Defendant when it paid FLSA overtime pay to plaintiffs caused by the failure of the defendant to include hazardous duty and/or environmental pay differential payments, to which plaintiffs have been and continue to be entitled as explained in paragraphs 1-65 herein.

69. By failing to properly calculate the regular rate of pay for plaintiffs and other employees similarly situated as required under law, defendant has violated, and is continuing to violate in a willful and intentional manner, the provisions of the FLSA. Therefore, at all times material herein, plaintiffs have been unlawfully deprived of overtime compensation and other relief for the maximum statutory period allowed under federal law.

70. As a result of defendant's willful and purposeful violations of the FLSA, there have become due and owing to plaintiffs an amount that has not yet been precisely determined. The employment and work records for plaintiffs are in the exclusive possession, custody and control of defendant and its public agencies and plaintiffs are unable to state at this time the exact amount owing to them. Defendant and its public agencies are under a duty imposed by the Government

Accounting Office retention schedule, the FLSA, 29 U.S.C. § 211(c), and various statutory and regulatory provisions to maintain and preserve payroll and other employment records with respect to plaintiffs from which the amount of defendant's liability can be ascertained.

71. Pursuant to 29 U.S.C. § 216(b), plaintiffs are entitled to recover liquidated damages in an amount equal to their back pay damages for Defendant's failure to pay overtime compensation at the correct rate on occasions when Defendant paid plaintiffs for overtime work.

72. Pursuant to the Back Pay Act, 5 U.S.C. § 5596, plaintiffs are entitled to recover interest on their back pay damages for defendant's failure to pay them overtime compensation at the correct rate on occasions when Defendant paid plaintiffs for overtime work.

73. Plaintiffs are entitled to recover attorneys' fees and costs under 29 U.S.C. § 216(b), and the Back Pay Act, 5 U.S.C. § 5596, as well as other applicable laws and regulations.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiffs, on their own behalf and on behalf of others similarly situated who opt into this lawsuit, pray that this Court:

(a) Enter judgment declaring that defendant has willfully and wrongfully violated its statutory obligations, and deprived each of the plaintiffs of their rights;

(b) Order a complete and accurate accounting of all the compensation to which plaintiffs are entitled;

(c) Award each plaintiff monetary damages, plus interest;

(d) Award each Plaintiff liquidated damages equal to the backpay awarded on their FLSA regular rate violation claims;

(e) Award plaintiffs their reasonable attorneys' fees to be paid by the defendant, and the costs and disbursements of this action; and

(f) Grant such other relief as may be just and proper.

Dated: May 27, 2022                                    Respectfully submitted,

*/s/ T. Reid Coploff*
T. Reid Coploff
McGILLIVARY STEELE ELKIN LLP
1101 Vermont Avenue, N.W.
Suite 1000
Washington, D.C.  20005
(202) 833-8855
trc@mselaborlaw.com

*Attorney of Record for Plaintiffs*